UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATED MISSION CORPORATION, d/b/a UNITED STATES MISSION, | CASE NO. C14-1844RSM |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| CITY OF MERCER ISLAND | |
| Defendant. | |

## I.     INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction. Dkt. #4. Having considered the parties' pleadings and documents in support thereof, as well as oral argument presented by the parties on February 9, 2015, the Court now GRANTS Plaintiff's motion.

## II.     BACKGROUND

The essential facts underlying this case are not in dispute. United States Mission Corporation d/b/a United States Mission ("the Mission") describes itself as a nonprofit religious organization and interdenominational Christian-based organization dedicated to carrying out the Social Gospel inspired by the Book of Matthew, Chapter 25. Dkt. #6 at ¶ ¶ 1-2. According to the Secretary-General of the Mission, Brian Jones, the Mission operates residential facilities

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 1

as a transitional program for homeless people who are willing and able to work.  *Id.* at ¶ 3. While living in the Mission's residential facilities, residents participate in a self-help work program through which they earn direct grants in aid, which they can then apply to their individual needs, such as renting an apartment, obtaining a vehicle and paying for education. *Id.*  Residents of the Mission are required to engage in door-to-door religious solicitation on behalf of the Mission.  *Id.* at ¶ 4.  The primary purpose of the solicitation is to practice the Social Gospel.  *Id.*  The Mission also obtains its funding through door-to-door solicitation conducted by its residents.  *Id.* at ¶ 5.  The Mission does not receive government funding of any kind. *Id.*

The City of Mercer Island is an eastern suburb of Seattle, WA, with approximately 24,000 residents.  Since at least 1994, Mercer Island has had a solicitation ordinance; however, the City had not enforced the ordinance between 2001, when this Court permanently enjoined the City of Medina from enforcing its solicitation ordinance, and February 14, 2014, when a newly-enacted ordinance repealing the prior version and changing certain provisions became effective.  *See* Dkt. #13, Exs. 1, 2 and 16.   The 2014 ordinance contains the following provisions:

**5.16.010 Definitions.**

Solicitor means any person who sells, offers for or exposes for sale, or who trades, deals or traffics in any goods or services in the city by going from house to house or from place to place or by indiscriminately approaching individuals.   A solicitor is also someone who seeks to obtain gifts or contributions of money, clothing or other valuable items for the support or benefit of private causes, or any charitable or non-profit organization, association, or corporation, by going from house to house or from place to place or by indiscriminately approaching individuals.

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 2

**5.16.020 Soliciting restrictions.**

A.   No solicitor shall engage or attempt to engage in the business of soliciting at any home, residence, apartment complex or business that prominently displays a "No Peddlers" or "No Solicitors" sign or any other similar sign that communicates the occupants' desire not to be contacted by solicitors.

B.   No solicitor shall engage in the business of soliciting between the hours of 7:00 p.m. and 10:00 a.m.

**5.16.030 License Required – Exemptions**

A.  It is unlawful for any person to act as a solicitor unless that person first secures a license in the manner provided in this chapter.

B.   The following are exempt from the licensing and application requirements under this chapter, but must comply with MICC 5.16.020:

    1.   Newspaper carriers, except as otherwise provided in paragraph 4, below;

    2.   Charitable, religious or nonprofit organizations or corporations which have received tax exempt status under 26 USC Section 501(c)(3);

    3.   Peddlers of fruits, vegetables, berries, eggs or any farm produce edibles raised, gathered, produced or manufactured by such person;

    4.  A person who, after having been specifically requested by another to do so, calls upon that other person for the purpose of displaying or delivering goods, literature or giving information about any article, thing, product or service;

    5.  A person engaged in political or religious solicitation; and

    6.   All persons under the age of eighteen (18) unless employed by another person or organization.

Dkt. #13, Ex. 16.

    The Mission conducts its solicitation activities between 2:00 p.m. and 8:00 p.m., Monday through Friday, and from 1:00 p.m. to 7:00 p.m. on Saturdays.  Dkt. #16 at ¶ 2. According to Mr. Jones, the Mission has found that the weekday hours, particularly between

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 3

5:00 p.m. and 8:00 p.m., represent the times that residents are most likely to be home, and are the most productive time for the Mission. Dkt. #6 at ¶ ¶ 8 and 9. Further, according to Mr. Jones, it is necessary to solicit every weeknight until 8:00 p.m. "to sustain the cost of the canvassing, which is the Mission's main means of support." *Id.* at ¶ 8.

In late 2014, the Mission prepared to begin practicing its Social Gospel and solicitation of donations on Mercer Island. *Id.* at ¶ 7. However, it has not yet engaged in such activity because of the ordinance prohibiting solicitation after 7:00 p.m. *Id.* In an effort to address the curfew with the City, the Mission's counsel attempted to contact the Mercer Island City Attorney twice in October, but received no response. Dkt. #5 at ¶ ¶ 3 and 4, Exs. 1 and 2. After further attempts to contact the City Attorney, the Mission received a request for an extension of time to respond on November 10, 2014, to which the Mission agreed. *Id.* at ¶ 5, Ex. 3. The Mission did not receive a response. *Id.* at ¶ 6. Accordingly, on November 26, 2014, the Mission made one more attempt to engage the City Attorney in a discussion of the curfew. *Id.* at ¶ 7, Ex. 4. After continuing to receive no response from the City, the Mission filed the instant action and moved for a preliminary injunction enjoining the City from enforcing Ordinance No. 14C-01.

### III.   DISCUSSION

#### A. Preliminary Injunctions

In determining whether to grant a preliminary injunction, this Court considers: (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to that party if an injunction is not issued; (3) the extent to which the balance of hardships favors the moving party; and (4) whether the public interest will be advanced by the injunction. *See Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456 (9th Cir. 1994); *Los Angeles Mem'l*

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 4

*Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).  The Ninth Circuit has often compressed this analysis into a single continuum where the required showing of merit varies inversely with the showing of irreparable harm.  *See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000).  Thus, the Mission will be entitled to preliminary relief if it is able to show either: (1) probable success on the merits and the possibility of irreparable harm; or (2) the existence of serious questions going to the merits and a fair chance of success thereon, with the balance of hardships tipping sharply in favor of an injunction.  *Miller*, 19 F.3d at 456.

      *1.  Likelihood of Success on the Merits*

The Court first turns to Plaintiff's likelihood of success on the merits of this matter. Plaintiff makes both facial and as-applied constitutional challenges to the subject ordinance, specifically alleging that the 7:00 p.m. curfew violates the First Amendment of the United States Constitution.  Dkt. #1.

The First Amendment provides in relevant part, "Congress shall make no law . . . abridging the freedom of speech. . . ."  U.S. CONST. AMEND. I.   By virtue of the Fourteenth Amendment, the First Amendment applies to actions by state governments.  *Everson v. Bd. of Educ.*, 330 U.S. 1, 8, 67 S. Ct. 504, 91 L. Ed. 711 (1947).  The protections afforded by the First Amendment are not absolute, however.   In particular, governmental entities may "fix reasonable hours when canvassing may be done," within certain limits.  *Schneider v. State (Town of Irvington)*, 308 U.S. 147, 165, 60 S. Ct. 146, 84 L. Ed. 155 (1939).

The Supreme Court has yet to clarify what standard of review applies to ordinances regulating door-to-door canvassing.  *See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 164, 122 S. Ct. 2080, 153 L. Ed. 2d 205 (2002) (expressly declining

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 5

to resolve the issue).  However, the Ninth Circuit, like many other Circuits, has utilized the time, place, and manner analysis when considering such ordinances.  *See*, *e.g.*, *Berger v. City of Seattle*, 569 F.3d 1029, 1036 (9th Cir. 2009); *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012); *Ass'n of Cmty. Orgs. for Reform Now v. Town of E. Greenwich*, 239 F. App'x 612, 613 (1st Cir. 2007) (citing cases).

> To pass constitutional muster, a time, place, or manner restriction must meet three criteria: (1) it must be content-neutral; (2) it must be "narrowly tailored to serve a significant governmental interest"; and (3) it must "leave open ample alternative channels for communication of the information."

*Berger*, 569 F.3d at 1036 (citations omitted).

As an initial matter, the parties disagree as to whether Mercer Island's solicitation ordinance is content-neutral.  Thus, the Court examines that question first.  The Ninth Circuit Court of Appeals has explained:

> A content-based regulation . . . is "presumptively unconstitutional," and subject to strict scrutiny.  "Content-based regulations pass constitutional muster only if they are the least restrictive means to further a compelling interest." . . .
>
> Thus, the initial question this case poses is whether the solicitation ordinance is content-based or content-neutral.  "[T]he appropriate level of scrutiny is initially tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content.")  If the ordinance is content-neutral, we must determine whether it is narrowly tailored, serves a significant government interest, and leaves open ample alternative channels of expression.  If the ordinance is content-based, it is presumptively invalid and we will uphold its constitutionality only if the City can demonstrate that it is the least restrictive means of furthering a compelling government interest.

*ACLU v. City of Las Vegas*, 466 F.3d 784, 792 (9th Cir. 2006).

The Supreme Court has explained:

> The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 6

with the message it conveys.  The government's purpose is the controlling consideration.  A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.  Government regulation of expressive activity is content neutral so long as it is "*justified* without reference to the content of the regulated speech."

*Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989) (citations omitted, emphasis in original).  However, the Ninth Circuit Court of Appeals has also reminded the District Courts that:

we are not required to find a content-based purpose in order to hold that a regulation is content-based.  "[T]he mere assertion of a content-neutral purpose [is not] enough to save a law which, on its face, discriminates based on content."  Rather, "[a]s a general rule, laws that by their terms distinguish favored speech on the basis of the ideas or views expressed are content based."  Thus we will hold that the solicitation ordinance is content-based if either the main purpose in enacting it was to suppress or exalt speech of a certain content, or it differentiates based on the content of speech on its face.

*ACLU v. City of Las Vegas*, 466 F.3d at 793 (citations omitted).

The City asserts, and the record reflects, that the revised solicitation ordinance was proposed and adopted to protect its residents from harassment by aggressive solicitors after residents complained that such solicitors had been appearing in the City and there were concerns that they [solicitors] were connected to an increase in burglaries.  Dkts. #9 at 2-4 and #13, Exs. 3-15.  That is a legitimate, non-content-based purpose, and the ordinance is therefore content-based only if it discriminates against speech on its face on the basis of content.  *Berger*, 569 F.3d at 1051.

In the instant case, the Mission argues that the ordinance is not content-neutral on its face because it targets speech about requests for donations.  Dkt. #4 at 6-7.  For example, the Mission asserts that the Ordinance does not prohibit non-commercial religious organizations from going door-to-door after 7:00 p.m. if they are not soliciting funds or donations.  The City

ORDER GRANTING PRELIMINARY INJUNCTION
PAGE - 7

responds that the Mission has misconstrued the Ordinance, and that it applies equally to commercial solicitors, non-commercial solicitors who are seeking funds, and to non-commercial solicitors who do not seek funds.  Dkt. #9 at 11.  That may be how the City intended its Ordinance to read, but that is not what it actually states.

As noted above, a solicitor is defined in part as:

> someone who seeks to obtain gifts or contributions of money, clothing or other valuable items for the support or benefit of private causes, or any charitable or non-profit organization, association, or corporation, by going from house to house or from place to place or by indiscriminately approaching individuals.

Dkt. #13, Ex. 16.  To support its position, the City propounds a strained reading of this definition.  It states that the Ordinance should be read to define solicitors as "someone who seeks to obtain gifts or contributions of money, clothing or other valuable items for the support or benefit of private causes" and as "any charitable or non-profit organization, association, or corporation."  Dkt. #9 at 11.  As a result, the City argues, the ordinance applies equally to all solicitation activities of a religious or charitable organization, whether it is knocking on doors to proselytize, to solicit donations, or a combination of both.  *Id.*

When interpreting a statute, this Court is guided by the fundamental canons of statutory construction and begins with the statutory text.  *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004).  The Court interprets statutory terms in accordance with their ordinary meaning, unless the statute clearly expresses an intention to the contrary.  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989).  Further, the Court must "interpret [the] statut[e] as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous."  *Boise Cascade Corp.*

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 8

*v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991).  Additionally, "[p]articular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme." *United States v. Lewis*, 67 F.3d 225, 228-29 (9th Cir. 1995).

Here, a review of the record reveals that the Ordinance's overall purpose is to regulate commercial and non-commercial solicitors.  Specifically, the City sought to address permitting with respect to commercial and non-commercial solicitors.  Further, it is clear that the City desired to revise its prior version of the Ordinance, which it had not been enforcing, because of fears that it contained unconstitutional restraints on free speech.  *See* Dkt. #13, Exs. 3-16.  There is nothing in the record demonstrating a desire to regulate non-commercial organizations who do not seek funds or other donations, and are simply proselytizing.  In fact, the concerns surrounding solicitors focused on an influx of "aggressive" solicitors, who appeared to be causing a certain level of fear of harm or property damage if the resident refused to give money to such solicitors. *Id.*

In addition, the prior solicitor ordinance clearly did not apply to non-commercial organizations that did not solicit funds.  Indeed, the prior version of the ordinance defined "solicitor" as a person, either a principal or an agent, who sold goods and services or who sought contributions or donations.  Dkt. #13, Exs. 1 and 2.  It did not include individuals or organizations who did not ask for donations or contributions.  *Id.*

Moreover, the City's construction of the Ordinance is belied by simple grammar.  The City would have this Court read the Ordinance as follows:

> "someone who seeks to obtain gifts or contributions of money, clothing or other valuable items for the support or benefit of private causes . . . by going from house to house or from place to place or by indiscriminately approaching individuals," and

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 9

> "any charitable or non-profit organization, association, or corporation, by going from house to house or from place to place or by indiscriminately approaching individuals."

However, under that reading the second clause is nonsensical because it ignores that the word "by" pertains to the action by someone who seeks to obtain gifts, contributions of money or other donations. The clear and logical reading of the Ordinance is that a solicitor is someone who seeks to obtain gifts, contributions of money or other donations to benefit private causes, as well as to benefit any charitable or non-profit organization, association, or corporation. As a result, the Court concludes that the Ordinance is content-based and is therefore subject to strict scrutiny. *ACLU v. City of Las Vegas*, 466 F.3d at 792.

Accordingly, the Court must next examine whether the 7:00 p.m. curfew provides the least restrictive means to further a compelling interest. Mercer Island contends that it has compelling interests in protecting the public safety and the privacy rights of its residents and that this Ordinance serves those interests in a constitutional manner. This Court, like many other Courts in similar circumstances, finds that it does not.

    a.  <u>Interest in Crime Prevention</u>

Mercer Island first argues that the 7:00 p.m. curfew serves to protect its residents from burglars who pose as canvassers, face-to-face solicitation that put its residents under duress, and other public-safety concerns. Dkt. #9 at 14-16. There is no doubt that preventing crime is a significant governmental interest. *See, e.g., Watchtower Bible & Tract Soc'y*, 536 U.S. at 163; *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). However, the City offers no evidence of criminality by canvassers or solicitors in Mercer Island, with the exeception of one incident in the last ten years, and relies heavily on 2012 and

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 10

2013 news reports from other municipalities. Dkt. #13, Exs. 3, 6 and 7. Nor does the City present evidence of the preventive effect of curfews on crimes by door-to-door canvassers.

Further, as the Sixth Circuit has noted:

> There is reason to doubt the effectiveness of a soliciting curfew in reducing crime. In *Watchtower Bible and Tract Society*, 536 U.S. at 169, in addressing a permitting requirement, the Supreme Court observed, "it seems unlikely that the absence of a permit would preclude criminals from knocking on doors and engaging in conversations not covered by the ordinance. They might, for example, ask for directions or permission to use the telephone, or pose as surveyors or census takers."
>
> What seemed "unlikely" with regard to a permitting requirement is equally so in the case of a curfew.

*Ohio Citizen Action*, 671 F.3d at 573-74 (citations omitted). Moreover, Courts have continuously found that curfews prior to 9:00 p.m. are not sufficiently connected to a municipality's interest in crime prevention. *See*, *e.g.*, *Ohio Citizen Action*, *supra*; *Watseka v. Illinois Public Action Council*, 796 F.2d. 1547 (7th Cir. 1986); *New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250 (3d Cir. 1986); *Wisconsin Action Coalition v. Kenosha*, 767 F.2d 1248 (7th Cir. 1985); *ACORN v. Frontenac*, 714 F.2d 813 (8th Cir. 1983); *Citizens Action Coalition of Ind., Inc. v. Town of Yorktown*, 2014 U.S. Dist. LEXIS 141158 (S.D. Ind. Sept. 30, 2014); *N.J. Envtl. Fed'n v. Wayne Twp.*, 3310 F. Supp.2d 681 (D.N.J. 2004); *Ohio Citizen Action v. City of Mentor-On-The-Lake*, 272 F. Supp.2d 671 (N.D. Ohio 2003).

Given this backdrop, Mercer Island could use less restrictive means to meet its interest in crime prevention. For example, the City's trespassing laws may be enforced against those who enter or remain on private property after its owner has indicated the intruder is not welcome. Furthermore, if the resident is not interested in receiving the particular solicitor's message, he may indicate as much and close the door. If the resident cares not to receive messages from any solicitors or canvassers, he or she may post a sign to that effect. But

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 11

Mercer Island may not, in the interest of achieving its legitimate objectives, broadly prohibit the Mission's activities when less restrictive alternatives will satisfactorily accomplish the same objectives.  As the Supreme Court held in *NAACP v. Button*, 371 U.S. 415, 83 S. Ct. 328, 9 L. Ed.2d 405 (1963), "Broad prophylactic rules in the area of free expression are suspect. . . . Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *Id.*  at 438.

      b.  <u>Interest in Residential Privacy</u>

Mercer Island also argues that the curfew requirement serves to protect the privacy interests of its residents who do not want strangers knocking on their doors during dinner time, or when they would otherwise enjoy the peaceful solitude of their homes after 7:00 p.m.  Dkt. #9 at 16-17.  As noted above with respect to public safety, the Court finds that restricting all solicitation activities after 7:00 p.m. is not the least restrictive means to achieve this objective.

There is no question that municipalities have a significant interest in protecting "the well-being, tranquility, and privacy of the home." *Ward*, 491 U.S. at 796.  However, there are far less intrusive ways to preserve residential privacy than by restricting all manner of speech. In *Watchtower Bible and Tract Society*, the Supreme Court noted:

> [I]t seems clear that . . . the ordinance, which provides for the posting of "No Solicitation" signs . . . , coupled with the resident's unquestioned right to refuse to engage in conversation with unwelcome visitors, provides ample protection for the unwilling listener.  The annoyance caused by an uninvited knock on the front door is the same whether or not the visitor is armed with a permit.

*Id*. at 168-69 (internal citation omitted).

In the instant case, Mercer Island's ordinance allows residents to avoid being inconvenienced by door-to-door canvassers at dinnertime by simply posting a "No Soliciting" sign on their property.  Moreover, the evidence does not support the City's claim that residents

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 12

are particularly protective of their privacy after 7:00 p.m.  While some residents complained that they did not want to post no soliciting signs because they were "unfriendly," at least one resident observed that a curfew is not likely to solve privacy issues because there are some people who work at night and sleep during the day.  Dkt. #13, Ex. 9.  Many other citizen complaints focused on licenses and ways to identify "legitimate" solicitors.  *Id.*  Accordingly, the Court finds that Mercer Island's interest in protecting the privacy rights of its citizens does not support the curfew.

For all of the above reasons, the likelihood of success on the merits tips in favor of the Mission at this time.

## 2.   *Irreparable Harm*

The Court now turns to the possibility of irreparable harm to the Mission if an injunction does not issue.  In conclusory manner, the Mission argues that it will suffer irreparable harm if an injunction does not issue because it is precluded from spreading its message and from soliciting funds during its most profitable hour.  Dkt. #4 at 13.  The City's response is that the Ordinance is constitutional and therefore the Mission suffers no harm.  Dkt. #9 at 19.

As the Ninth Circuit has instructed, "'under the law of this circuit, a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim.'"  *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (citations omitted).  Because the Mission has, at a minimum, raised a colorable claim that its First Amendment rights have been infringed, it has sufficiently established that it will suffer an irreparable injury absent an injunction barring enforcement of the Ordinance against it.  *See id.* at 1001-02.

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 13

### 3. Balance of Equities

The Ninth Circuit Court of Appeals has previously weighed the balance of equities in favor of a Plaintiff demonstrating irreparable harm.   "[T]his case raises serious First Amendment questions and compels a finding that the potential for irreparable injury exists, or at the very least, that "'the balance of hardships tips sharply in [the Mission's] favor.'" *Warsoldier*, 418 F.3d at 1002 (citation omitted).  Accordingly, under the circumstances of this case, this Court finds that the balance of equities also tips in favor of the Mission.

For all of these reasons the Court GRANTS the Mission's request for a preliminary injunction.

### 4. Plaintiff's Request for Waiver of Bond

Finally, the Court addresses the Mission's request for a waiver of bond.  Federal Rule of Civil Procedure 65(c) provides that this "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  The Ninth Circuit has recognized that Rule 65(c) "'invests the district court with discretion as to the amount of security required, if any.'"  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)).  For example, "the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id.*

In the present case, there is no realistic likelihood that Mercer Island will be harmed by an Order enjoining enforcement of the curfew in the solicitation Ordinance.  This is particularly true where the City had not enforced its prior ordinance for 14 years, and the City has not responded at all to the Mission's waiver request.  In light of these circumstances, the Court

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 14

exercises its discretion to set a nominal bond under Rule 65(c).  *See Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (upholding a nominal bond where the cost to the government would be minimal, and the class advancing the public interest had unremarkable financial means).  The Court finds that a bond in the amount of $100 is sufficient in this case.

## IV.    CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS that:

1)  Plaintiff's Motion for Preliminary Injunction (Dkt. #4) is GRANTED.

2)  Plaintiff's Request for Waiver of Bond is GRANTED IN PART.  The Mission shall secure and register with the Court a bond in the nominal amount of $100.

DATED this  10th  day of February, 2015.

      /s/  Ricardo S. Martinez
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING PRELIMINARY
INJUNCTION
PAGE - 15